IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN SARAVIA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DYNAMEX, INC., DYNAMEX FLEET SERVICES, INC., DYNAMEX OPERATIONS EAST, INC., and DYNAMEX OPERATIONS WEST, INC.,<br><br>Defendants. | No. C 14-05003 WHA<br><br>**ORDER RE MOTION TO COMPEL PRODUCTION OF TAX RECORDS** |

## INTRODUCTION

In this conditionally certified collective action under the Fair Labor Standards Act, defendants move to compel the production of all opt-in plaintiffs' tax records. For the reasons stated below, defendants' motion is **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

Defendants Dynamex, Inc., Dynamex Fleet Services, Inc., Dynamex Operations East, Inc., and Dynamex Operations West, Inc. (collectively, "Dynamex") offer delivery logistics services for "last mile" deliveries. Plaintiff Juan Saravia and more than 155 opt-in plaintiffs who contracted with Dynamex to provide delivery services to its clients contend they were misclassified as independent contractors. They seek minimum wages and overtime premiums under the Fair Labor Standards Act.

In October 2015, an order conditionally certified the collective action for the purpose of facilitating notice to potential opt-in plaintiffs. More than one-hundred fifty individuals opted-in to the collective action. Dynamex sought written discovery from thirty-six of the opt-in plaintiffs. One such request for production was as follows (Perez Decl., Exh. 2):

> ALL state and Federal income tax returns for YOU or ANY business entity (*e.g.*, sole proprietorship, corporation, limited liability company, or partnership) in which YOU owned more than a 20% share or interest (including all forms, schedules, attachments, exhibits, 1099s, W2s, 1098s, worksheets and/or supporting documents) and that was involved in TRANSPORTATION SERVICES for all tax years 2008 to the present.

The opt-in plaintiffs that were subject to this request objected on the basis that it constituted an invasion of privacy. Dynamex filed a discovery letter seeking an order compelling the production of the tax documents. At the hearing on Dynamex's discovery letter, plaintiffs were ordered to produce tax records from one year for each opt-in plaintiff in a sample group of twelve identified by Dynamex. The deadline for the production was set as June 17 at noon. The undersigned stated, "if they turn out to be very useful, then [Dynamex] can come back to me and we'll probably get you more" (Dkt. No. 131 at 23–24).

Dynamex identified twelve opt-in plaintiffs and selected a year for each. Plaintiffs failed to produce a single tax document by the deadline. An hour after the deadline, plaintiffs stated they had acquired documents for only six of the twelve opt-in plaintiffs designated by Dynamex, though they hoped to produce documents from two more soon after but that they could not acquire tax records for the remaining four individuals. Dynamex designated four additional opt-in plaintiffs from which it sought tax records. Plaintiffs produced the tax records for the resulting set of twelve on a rolling basis over the several weeks following the deadline.

When the designated opt-in plaintiffs finally produced their tax records, they failed to produce informational forms such as 1099s or W2s issued by their businesses, although many indicated they had contracted for labor. Similarly, many failed to produce such forms received by themselves or their businesses. Finally, many omitted required forms or provided forms that lacked signatures.

1    On June 21, Dynamex filed a further discovery letter, informing the Court of plaintiffs'
2 tardy and deficient production. At a hearing, the Court directed Dynamex to file a formal
3 motion to compel the production of the missing tax documents and to expand the scope of the
4 request beyond the sample group, as contemplated at the first discovery hearing.

5    This order follows briefing from each side allowed on an abbreviated schedule and oral
6 argument.

**ANALYSIS**

8    Plaintiffs object to Dynamex's request for the production of tax records for three
9 reasons. Plaintiffs first assert that Dynamex has failed to meet the exceptions to the qualified
10 privilege for tax records under California law. They next contend that the tax records are of
11 minimal, if any, relevance in this action. Finally, they argue that Dynamex's motion is merely
12 pretext for harassment and to place a skewed sample of the collective before the Court.
13 Plaintiffs also contend that if Dynamex's motion is granted, its scope should be limited to the
14 thirty-six opt-in plaintiffs that Dynamex timely served with requests for production. Each
15 argument is addressed in turn.

16    **1.    PURPORTED PRIVILEGE.**

17    Under federal law, tax returns are not privileged from discovery. *Heathman v. United*
18 *States District Court*, 503 F.2d 1032, 1034–35 (9th Cir. 1974). Under California law, however,
19 tax records are subject to a qualified privilege. *Webb v. Standard Oil Co.*, 49 Cal. 2d 509, 513
20 (1957). Plaintiffs contend that California privilege law applies because "[i]n diversity actions,
21 questions of privilege are controlled by state law." *In re Cal. Pub. Utils. Comm'n*, 892 F.2d
22 778, 781 (9th Cir. 1989). Plaintiffs attempt to stretch the meaning of a "diversity action" to
23 encompass this action simply because the citizenship of the parties is diverse and the
24 amount-in-controversy requirement is met. (Notably, it is not clear that the citizenship of our
25 parties *is* diverse, though this order accepts plaintiffs' representation solely for the sake of
26 argument.) But *In re California Public Utilities* cited Rule 501 of the Federal Rules of
27 Evidence as the source of the applicable rule, which provides that state privilege law applies
28 where "state law supplies the rule of decision." That is not our case. Notwithstanding the

diversity of citizenship among the parties and the amount in controversy, plaintiffs' claims arise under federal law, specifically the FLSA, 29 U.S.C. 201, *et seq.*, and federal privilege rules apply. Plaintiffs' attempt to apply California's qualified privilege over tax records is flat-out wrong.[1]

Plaintiffs also cite several decisions that acknowledge that compelling the production of tax returns could implicate public policy considerations such as "the need . . . to encourage taxpayers to file complete and accurate returns." *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975); *see also Aliotti v. Vessel SENORA*, 217 F.R.D. 496, 498 (N.D. Cal. 2003) (Judge Edward M. Chen); *Phillip M. Adams & Associates, L.L.C. v. Fujitsu Ltd.*, 2010 WL 1330002, at *8 (D. Utah Mar. 29, 2010) (Judge David Nuffer). Those decisions did not ascribe any primacy to those public policy considerations that would require denial of Dynamex's motion here. Indeed, *Premium* merely held that a district court did not abuse its discretion by relying on those considerations.

The privacy interests of the opt-in plaintiffs have been and will be considered in evaluating Dynamex's motion, but those interests must be weighed against Dynamex's interest in advancing a fully-informed defense on the merits. In the circumstances of this case, this order holds that plaintiffs' privacy interests are insufficient to overcome the probative value of the tax records.

**2. PROBATIVENESS OF TAX RECORDS.**

Liability in this case will primarily hinge on the question of whether Dynamex properly classified our plaintiffs as "independent contractors" rather than "employees." This determination depends on a multi-factor test that considers whether "as a matter of economic reality, the individuals are dependent upon the business to which they render service." *Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1370 (9th Cir. 1981) (citations omitted). The factors to be considered under the FLSA include:

---

[1] This order notes that a separate action claiming that Dynamex misclassified its drivers under state law remains pending. *See Dynamex Operations W., Inc. v. Superior Court*, 230 Cal. App. 4th 718 (2014) *review granted and opinion superseded sub nom. Dynamex Operations W. v. S.C.*, 341 P.3d 438 (Cal. 2015). California privilege law possibly *would* apply to the discoverability of drivers' tax returns in that case.

4

> (1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; (6) whether the service rendered is an integral part of the alleged employer's business; (7) ownership of property or facilities when work occurred; and (8) whether responsibility under the contracts between a labor contractor and an employer passes from one labor contractor to another without material changes.

*Torres-Lopez v. May*, 111 F.3d 633, 646 (9th Cir. 1997).

Dynamex contends that plaintiffs' tax returns here would indicate the amount of gross income received from sources apart from Dynamex, the itemized expense deductions and corresponding amounts, the types and value of investments made and expenses incurred in the development of plaintiffs' business, and whether plaintiffs themselves relied on contractors or employees and how they were paid. Additionally, for some plaintiffs, these tax records may be the *only* records of their business finances. The limited tax records already produced demonstrate that some plaintiffs held themselves out as independent businesses, deducted expenses, and made investments in their own businesses.

Dynamex cites *In re Fedex Ground Package System, Inc.*, Case No. 05-527 (MDL-1700), 2006 WL 3755311, at *1 (N.D. Ind. Dec. 14, 2006) (Chief Judge Robert L. Miller Jr.), as an example of a decision compelling the production of tax documents in an FLSA case. Plaintiffs respond that *Fedex* is inapposite because it did not consider California's privilege for tax records, but, as stated, California law does not apply here. Plaintiffs also contend that *Fedex* upheld a magistrate judge's determination that the tax returns were irrelevant to the plaintiffs' FLSA claims (Pls.' Opp. at 10). This is incorrect. In *Fedex*, Chief Judge Miller expressly stated "[t]o the extent the Magistrate Judge found that the information contained in the tax returns wasn't relevant to determining the economic reality of the plaintiffs' working relationship with [the defendant], the court parts with the magistrate judge on this point." *Id.* at *3. *Fedex* held that the tax returns were relevant to the plaintiffs' opportunity for profit or loss depending on his or her managerial skill. *Ibid.* Thus, Chief Judge Miller compelled the FLSA plaintiffs to produce their tax returns. So too here.

The tax records that Dynamex seeks will provide probative information indicating the structure of each plaintiff's businesses, the nature of their income and expenses, and the extent of their gross income, which will be useful in demonstrating whether each of the opt-ins was properly classified as an "independent contractor" or not.

### 3. ALLEGED ULTERIOR MOTIVES.

Plaintiffs argue that Dynamex's request for the production of tax records is merely an attempt to harass and intimidate plaintiffs and to pressure them to withdraw participation in this action. They also argue that Dynamex intentionally requested tax records from outliers who operated multiple vehicles and themselves hired several additional drivers and helpers in an attempt to present a skewed representation of the collective action.

Possibly Dynamex's request for production may have a small chilling effect on plaintiffs' pursuit of their claims. But our plaintiffs placed the extent and nature of their income in issue here, and Dynamex is entitled to vet their representations through review of their tax records.

Without regard to the tax return issue, we have already seen numerous instances of opt-ins failing to appear for their depositions. They seem only marginally interested in being participants. Having to allow inspection of their tax returns will require some effort and some opt-ins may then prefer to opt-out and spare themselves the trouble. But this is not harassment. This is a reasonable burden on prosecuting a claim for money — namely responding to reasonable discovery, discovery that plausibly will show some opt-ins want it both ways, that is, they want to cash in on any settlement herein as if they were "employees" while telling the IRS that they were themselves "employers" entitled to deductions. This will shed light on their status as independent contractors or not.

6

If, as plaintiffs claim, Dynamex has cherry-picked outliers whose tax records indicate that they did not meet the definition of an employee under the FLSA, plaintiffs will have no trouble countering Dynamex's case with evidence from the core of the collective.[2]

### 4. LIMITED SCOPE OF DISCOVERY REQUEST.

Finally, plaintiffs point out that Dynamex seeks the production of tax returns from *all* opt-in plaintiffs, although Dynamex only served thirty-six plaintiffs with the original request for production. Dynamex counters that its requests for production encompassed "ANY individual who has filed a consent to join the instant action" and "ANY business(es) created, owned (in full or part), or managed by ANY individual who has filed a consent to join the instant action . . . ."

Dynamex's argument is too clever by half. The individual plaintiffs from which Dynamex requested tax records cannot possibly be expected to produce the tax records from *other* plaintiffs who were never served with the request. Dynamex apparently believed it could litigate its case based solely on the documents produced by those thirty-six individuals. To the extent that was a strategic error, Dynamex, not our plaintiffs, must bear the burden of that error. Dynamex may not use this motion to compel to retroactively *expand* its initial discovery request, particularly not this far after the discovery deadline has already passed.

### CONCLUSION

For the reasons stated above, the thirty-six plaintiffs to whom Dynamex served requests for production must produce all federal tax records within their possession or that they have authority to obtain (such as from an accountant or from TurboTax) relevant to their claims herein for all years from 2008 to the present during which they contracted with Dynamex and for which they contend they should have been classified as "employees." The records to be produced shall include federal tax returns, all informational forms, including 1099s, W2s,

---

[2] As discussed below, this order only compels production of tax records pertaining to the plaintiffs that were timely served with discovery requests — a limitation sought by plaintiffs. If plaintiffs truly feel Dynamex's requests focus on anomalies, they should welcome the opportunity to produce additional evidence favorable to their position.

Plaintiffs' request that Dynamex make a proffer of evidence that individuals operated more than one vehicle is similarly perplexing. Again, plaintiffs should welcome the opportunity to produce tax records from its strongest examples (*i.e.*, those who worked alone).

7

1040s, 1120s, 1125-As, and all accompanying schedules to the same extent submitted by the plaintiffs to the Internal Revenue Service.[3]

Plaintiffs that have already produced some tax records, but not all of the records identified above, must perfect their production. To the extent any of the thirty-six identified plaintiffs is unable to produce any record described above for any covered year, he or she must provide a sworn declaration explaining the failure to produce such document.

The required production must be completed no later than **AUGUST 15 AT NOON**. Failure to timely comply will likely result in dismissal from this action with prejudice or in an adverse inference. To be clear, plaintiffs have a duty to retrieve and produce any and all responsive records that may be held by a third party or by their respective business entities.

**IT IS SO ORDERED.**

Dated: August 4, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[3] Although both sides agree that Dynamex served thirty-six plaintiffs with the requests for production, but neither side provided the names of those plaintiffs. Dynamex's proof of service of its requests for production included several duplicates (and thus fewer than thirty-six names). By **NOON ON AUGUST 5**, Dynamex shall file for the Court and for the benefit of plaintiffs' counsel a notice identifying the thirty-six opt-in plaintiffs that it served with its requests for production.

8