IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN SARAVIA, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>DYNAMEX, INC., DYNAMEX FLEET SERVICES, LLC, DYNAMEX OPERATIONS EAST, INC., and DYNAMEX OPERATIONS WEST, INC.,<br><br>    Defendants. | No. C 14-05003 WHA<br><br>**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

In this collective action under the Fair Labor Standards Act, an order denied defendants' motion to decertify and invited both sides to bring a motion for summary judgment as to a single plaintiff. That plaintiff moves for summary adjudication that he was misclassified as an "independent contractor" and summary judgment on his claim for overtime wages. Defendants move for summary judgment on all claims on the basis that plaintiff was properly classified. Three defendants also move for summary judgment on the basis that they never contracted with plaintiff.

For the reasons stated below, both sides' motions on the misclassification issue are **DENIED**, and plaintiff's motion on the overtime claims is also **DENIED**. To the extent stated below, the motion of the defendants that did not contract with plaintiff is **GRANTED.**

**STATEMENT**

Plaintiff Juan Saravia contracted with defendant Dynamex Operations West, LLC, to provide delivery services to its customers. Saravia contends that Dynamex improperly classified him and all of its drivers as an "independent contractor" rather than as an "employee," and brings a collective action under the Fair Labor Standards Act seeking unpaid minimum wages and overtime premiums.

Saravia commenced this action in November 2014. In October 2015, an order conditionally certified (for the purpose of facilitating notice and opting in) a collective of all "Transportation Service Providers" ("TSPs") who performed delivery work for Dynamex in California who signed one of the same agreements that Saravia did (Dkt. No. 86). More than one hundred fifty plaintiffs opted-in to the collective action.

In September 2016, an order denied Dynamex's motion to decertify the collective action and directed counsel for plaintiffs to "identify the single individual who presents, in counsel's view, the *strongest* case for misclassification" (Dkt. No. 205 at 8). Both sides were then invited to bring summary judgment motions regarding that individual, both as to misclassification and as to liability and damages. Plaintiffs' counsel identified opt-in plaintiff Cesar Benitez, Jr. The other opt-in plaintiffs (and Saravia), were invited to consent to be bound by a ruling against Benitez, with the possibility that they could alternatively benefit from collateral estoppel on the misclassification issue based on a ruling in favor of Benitez. More than one hundred individuals so consented.

Both sides moved for summary judgment as to Benitez's individual claims. Defendants Dynamex, Inc., Dynamex Operations East, LLC, and Dynamex Fleet Services, LLC, also move for summary judgment, inasmuch as they never contracted with Benitez. This order follows full briefing and oral argument.

**ANALYSIS**

1.  **MISCLASSIFICATION.**

There are too many fact issues pertaining to the misclassification issue to grant summary judgment for either side. As just one of many examples, Benitez contends that Dynamex had

the right to control his attire, namely by requiring him to wear a uniform while performing deliveries for Pep Boys, the sole customer Benitez serviced.

Section 8(p) of Benitez's agreement with Dynamex provided as follows, in pertinent part (Benitez Decl., Exh. 1):

> In accordance with the desire of the Shippers, CONTRACTOR'S drivers shall be uniformed for identification and security purposes and shall maintain a professional experience. The uniform shall consist of clean, logoed, professional attire which adequately identifies CONTRACTOR'S drivers as contracting through Dynamex. For purposes of this Agreement each driver shall maintain a professional appearance n accordance with the best standards of the industry.

In his declaration submitted in support of his motion for summary judgment, Benitez averred (Benitez Decl., ¶ 22):

> Dynamex requires me to wear a uniform and identification badge while on the job. The required uniform included a blue shirt with Dynamex's corporate name and logo. Attached hereto as Exhibit 2 is a picture I took of myself wearing the uniform I have to wear every day.

Furthermore, in his brief in support of his motion, Benitez stated, "[i]t is undisputed that Dynamex requires Mr. Benitez to wear a uniform bearing the company logo when working for Dynamex" (Pl.'s Mtn. at 6). He contended that requirement came from the terms of his agreement with Dynamex.

In preparation for its opposition to Benitez's motion, Dynamex hired two private investigators who surveilled Benitez for several days. The investigators reported that Benitez did *not* wear a uniform while performing deliveries (Lopez Decl., Exh. 2; Guillermo Decl., Exhs. 2–3).

Benitez filed a reply declaration in which he explained (Benitez Reply Decl. ¶¶ 4–5):

> Even though I know I am supposed to wear the uniform, I have not been wearing it lately. I apologize to the Court for not disclosing this before. The reason I have not been wearing the uniform is that I have had so much trouble controlling my weight that I can no longer fit comfortably into my uniform. I have struggled with my weight for some time, but in the past year, it has gotten worse. I now weigh well over 400 pounds. I am embarrassed about my weight. It has been difficult for me to admit this to people who don't already see me on the job.

3

> I have attempted to obtain a uniform from Dynamex that fits, but the largest size Dynamex has been able to provide me is a 5XL. This is the size Dynamex provided me in June, 2013. I paid for and received 6 total uniforms from Dynamex when I started, each of which is a size 5X (which I understand is the largest size Dynamex has available). I made sure to get one for every day of the week. However, I now wear a 7XL. My co-workers at the Pep Boys account are much smaller people and I have seen them wear their uniforms regularly.

In his reply brief, Benitez set forth the language of his agreement with Dynamex addressing uniforms, but omitted the prefatory phrase "[i]n accordance with the desire of the Shippers," leaving the misimpression that the uniform requirement was absolute (Pl.'s Reply at 2).

Whether or not Benitez is required to wear a uniform and whether he, in fact, wears it bear on the extent of Dynamex's right to control the means and manner of Benitez's work. Indeed, the uniform requirement has been the single example of Dynamex's control of its drivers cited most frequently and adamantly by plaintiffs' counsel throughout the extensive motion practice in this case. Yet, the facts bearing on this issue, among many other critical issues, are hotly contested. Indeed, Benitez's late disclosure that he recently stopped wearing his uniform casts doubt on whether he *ever* wore his uniform.

Moreover, the agreement is ambiguous on its face. For example, it is unclear whether the phrase "[i]n accordance with the desire of the Shippers" means that any uniform requirement applies only at a customer's request or if it simply declares the desire of Dynamex's customers as the motivation for any uniform requirement. Beyond that ambiguity, however, our record lacks any explanation of how, if at all, Benitez came to understand that he was required to wear a uniform or how Pep Boys communicated its "desire" to have Benitez wear a uniform to Dynamex.

Among numerous others, there are also factual disputes and omissions in the record relating to whether Benitez had to attend a mandatory training session, what was said at any preliminary meeting that Benitez attended, and how Benitez receives the details of his assigned deliveries for Pep Boys. All of these bear on the economic reality of Benitez's working

4

relationship with Dynamex, which is the central question here. The issue of misclassification cannot be resolved as a matter of law on this record.

Factual disputes also preclude summary judgment on Benitez's overtime claim, which claim also depends on the misclassification issue.

Prior to trial, both sides shall produce to the other all documents that summarize, describe, or reference any request by Pep Boys that Dynamex require the drivers servicing that account to wear uniforms. Additionally, both sides shall produce any documents indicating any request or inquiry by Benitez to Dynamex requesting a larger uniform.

Finally, Dynamex shall produce its full agreement with Pep Boys.

This additional discovery shall be completed by **DECEMBER 16** and shall be accompanied by a declaration by counsel explaining the due diligence actually undertaken to conduct a thorough search.

### 2.  OTHER DYNAMEX ENTITIES.

Defendants Dynamex, Inc., Dynamex Fleet Services, LLC, and Dynamex Operations East, LLC, move for summary judgment on all claims against them, inasmuch as they never contracted with Benitez (or any member of our collective). Benitez does not oppose the motions by Dynamex Fleet Services or Dynamex East, but contends that there is a factual dispute as to whether Dynamex, Inc., is a proper defendant, inasmuch as it is a "joint employer," because Dynamex, Inc.'s "Compliance Group" monitored the regulatory requirements of its subsidiaries' drivers.

This joint employment theory appeared for the first time in Benitez's opposition to Dynamex's motion for summary judgment. The complaint simply named Dynamex, Inc., among the defendants, and referred to all defendants collectively as "Dynamex" thereafter. Benitez (and the rest of our plaintiffs) cannot pursue claims at summary judgment based on a theory that was never properly pled. *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006).

In any case, there is simply no evidence that Dymanex, Inc., ever had *any* relationship with Benitez, much less one that could allow it to be considered a joint employer. Our court of

appeals applies two tests to determine whether a second entity is a "joint employer" under the FLSA. *See Guifu Li v. A Perfect Day Fran., Inc.*, 281 F.R.D. 373, 400 (N.D. Cal. 2012) (Judge Lucy Koh) (discussing the two tests). The first is the same "economic reality" test applied to determining whether a worker is an "employee" or an independent contractor. This test applies when "a company has contracted for workers who are directly employed by an intermediary company." *Chao v. A–One Medical Servs., Inc.*, 346 F.3d 908, 917 (9th Cir. 2003). The alternate test applies where two entities share operations and finds a joint employment relationship where two conditions are met (1) "the employers are not 'completely disassociated' with respect to the employment of the individuals," and (2) "one employer is controlled by another or the employers are under common control." *Id.* at 912–13.

There is no evidence Dynamex, Inc., had any right to control *Benitez*. Indeed, our record does not even describe Dynamex, Inc.'s right to control *Dynamex West*. All we know is that Dynamex, Inc.'s compliance group monitored regulatory compliance of drivers generally. Given the complete absence of such control — and indeed the absence of any relationship — the economic reality is that Dynamex, Inc., cannot be Benitez's employer. Furthermore, Dynamex, Inc., is plainly "completely disassociated" from Dynamex West with regard to Benitez, since there is no relationship to associate. Thus, under either test, Benitez cannot maintain a claim against Dynamex, Inc. Accordingly, this order **GRANTS** the motion for summary judgment of Dynamex, Inc., Dynamex Fleet Services, and Dynamex East as to Benitez.

## CONCLUSION

To the extent stated above, Benitez's motion is **DENIED**, and Dynamex's motion is **DENIED** as to the central issue, but **GRANTED** as to the entities with which Benitez never contracted.

**IT IS SO ORDERED.**

Dated: December 4, 2016.

WILLIAM ALSUP

6

UNITED STATES DISTRICT JUDGE