IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JUAN SARAVIA, individually and on behalf of himself and all others similarly situated,

    Plaintiffs,

  v.

DYNAMEX OPERATIONS WEST, LLC,

    Defendant.

No. C 14-05003 WHA

**ORDER GRANTING FINAL APPROVAL OF COLLECTIVE SETTLEMENT AND APPROVING SERVICE AWARD**

**INTRODUCTION**

In this wage-and-hour collective action under the Fair Labor Standards Act, both sides seek final approval of a collective-wide settlement, and the named plaintiff seeks a service award. Several objections were filed. For the reasons stated below, the objections are **OVERRULED**, and final approval is **GRANTED**. The service award is also **APPROVED**, though reduced.

**STATEMENT**

Plaintiff Juan Saravia represents a certified collective of drivers who contracted with defendant Dynamex Operations West, LLC. Plaintiffs contend Dynamex improperly classified them as independent contractors rather than as employees and failed to pay them minimum wages and overtime premiums.

After a full and hard-fought discovery period, an order denied defendants' motion to decertify the collective action but invited plaintiffs to identify the individual with the easiest

case for misclassification and further invited both sides to move for summary judgment as to that plaintiff (rather than as to the named plaintiff). Summary judgment was denied for both sides. Shortly before trial, the parties reached a settlement agreement, and an order granted preliminary approval of that agreement.

After several drafts and resolution of a contested term of the settlement agreement, the parties notified the members of the collective of the settlement and the procedure for opting out, objecting, or offering a conditional challenge to the settlement.

More than 140 individuals initially opted in as plaintiffs. After various motions to dismiss certain individuals and the narrowing of the case before summary judgment, 107 plaintiffs (including 106 opt-ins and our named plaintiff) remained members of the collective. After notice of the settlement was disseminated, one plaintiff opted out of the settlement. Another challenged the settlement agreement, but did not withdraw. A third attempted to challenge the settlement agreement, but failed to do so according to the proper procedure. Accordingly, the proposed settlement affects a total of 106 plaintiffs.

This order follows plaintiffs' counsel's brief on the merits of the settlement, briefs from both sides addressing objections, and a fairness hearing.

**ANALYSIS**

"A settlement should be approved if it is fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (internal quotations omitted).

1. **PROPOSED SETTLEMENT.**

    A. **Settlement Fund.**

Dynamex will pay a total of $500 thousand to settle claims herein. This amount is *exclusive of* attorney's fees and costs, settlement administration costs, and the service award to Saravia. Fees and costs are addressed in a separate order on plaintiffs' counsel's disputed motion. Dynamex is paying administrative costs. The service award is addressed below. There is no possibility that any of the settlement fund will revert to Dynamex.

The plaintiffs who remain part of the collective will receive a direct monetary distribution. There will be *no* claims procedure.

The amount disbursed to each plaintiff will be a minimum payment of two hundred dollars, plus a proportion of the total settlement fund after the minimum payment is disbursed, which proportion will be based on each plaintiff's *pro rata* share of the total number of overtime hours worked. The calculation of overtime hours is based on plaintiff's driver activity reports ("DARs"), produced and analyzed by Dynamex. Those reports captured the times each driver made pick-ups and drop-offs.

Individual members of the collective were allowed, before the opt-out period closed, to challenge the calculated amount of their overtime hours with written documentation of a different calculation. (No plaintiff exercised that option, though one plaintiff objected to the formula for the initial calculation, as discussed below.)

The result is an average distribution of approximately $4500 per plaintiff.

### B. Scope of Release.

The settlement agreement defines the claims to be released as follows (Konecky Decl., Exh. A § 1) (errors in original):

> [F]or the duration of the Class Period, all claims that were pled in this action, including claims for failure to pay all minimum wages (as pled under Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.*); failure to pay all over (as pled under Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.*); failure to compensate for all hours worked (as pled under Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.*), liquidated damages under 29 U.S.C. § 216(b), and any claims under state or federal law seeking substantially the same recovery (*i.e.*, lost wages penalties) as secured by the above-referenced statutory claims. The Class Member Released Claims shall be released to the maximum extent that such claims can be released at law, irrespective of the forum, public or private, in which such claims could have been or be brought.

In other words, plaintiffs will release only the claims pled in the complaint and other claims seeking substantially the same lost wages. No release will extend prospectively or predate the period for which plaintiffs will be compensated (*i.e.*, it does not extend before November 12, 2011).

3

Additionally, as a resolution of an earlier dispute, plaintiffs who do not timely cash their checks will still release their claims, though it is Dynamex's burden to prove a plaintiff challenging that release received his or her check. Dynamex, however, will be entitled to a rebuttable presumption that the plaintiff in question received the check if it Dynamex shows it was sent to an address provided by the plaintiff in question (*see* Dkt. Nos. 255–58).

Defense counsel will deliver a report of uncashed checks thirty days and sixty days after checks are disseminated so that plaintiffs' counsel can ensure plaintiffs timely cash their checks.

### C. Administration Costs.

Dynamex will pay all costs of administering the collective settlement.

### D. Notice.

The notice distributed to the class underwent several rounds of edits by the Court to ensure it accurately and clearly explained the terms of the settlement agreement and the procedures surrounding the motion for final approval. This order finds the notice was adequate.

## 2. COST/BENEFIT TO PLAINTIFFS.

The instant settlement is the product of negotiations following three settlement conferences between the parties, following bitterly-fought discovery. It further follows several orders on motions that addressed the merits of the case, including an order denying summary judgment for both sides as to an opt-in plaintiff handpicked by plaintiffs' counsel as the easiest case for misclassification.

The recovery represents a significant discount on the total recovery for the collective if it had won at trial, but, given that the *easiest* case could not win at summary judgment, there remained a very real risk that the collective, or the bulk of it, would have received *zero*. Indeed, no plaintiff would have been able to recover anything unless that easiest case succeeded at trial *and then* each plaintiff could successfully rely on collateral estoppel from that result as a basis for their own successful motion. (Failing that, the collective would likely have been decertified.) We arrive here after a fierce uphill battle, with several difficult stretches still ahead and success no sure thing at the end.

In light of those risks, this order finds the recovery, while modest, constitutes fair, reasonable, and adequate consideration for the release herein.

This order now turns to two objections and one statement made in connection with an opt-out filed by members of the collective. This order finds each unavailing.

### A. Brian Barbaro.

Brian Barbaro objected to the formula for distribution of funds. Specifically, he contends that Dynamex's DARs serve as poor proxies for hours worked, and so they do not account for all the time he spent waiting for new assignments.

In fact, all agree that DARs are imperfect measurements of hours worked; however, they can be both under- and over-inclusive. That is, they might fail to account for time spent on call between deliveries or loading and unloading time, but they might also count time spent taking a break between picking up cargo and dropping it off.

Nevertheless, DARs provide a decent objective measurement. Any other methodology, besides reliance on an individual plaintiff's actual records, would likely be arbitrary. The settlement agreement allowed plaintiffs to submit such records to prove up a different calculation of actual overtime hours, so Barbaro had the opportunity to make his best case for a greater disbursement. He chose not to do so.

Barbaro's alternative methodology — a *per capita* even distribution of settlement funds — is untenable and divorced from the distribution of alleged wrongs suffered by each plaintiff. Indeed, that would *assure* that disbursement was arbitrary. Notwithstanding the imperfect measurement of overtime hours worked, this order finds the settlement is fair, reasonable, and adequate. Accordingly, Barbaro's objection is **OVERRULED**.

In his statement, Barbaro noted he did not want to be removed from the collective. All agree that he remains a member of the collective and will therefore receive a disbursement and release his claims.

### B. De Shaunn Smith.

Plaintiff De Shaunn Smith purported to object by emailing the settlement administrator after calling plaintiffs' counsel. Plaintiffs' counsel informed Smith his objection did not

5

conform to the required procedure for objecting, to which Smith responded by asking counsel to prepare his objection for him. Plaintiffs' counsel informed Smith they would communicate his objection, but that they could not formally submit it lest they develop a conflict of interest.

Smith complains that his disbursement is based only on hours worked in 2011 and forward, though he performed deliveries for Dynamex from 2006 through 2012. The fact that Smith's recovery does not account for all overtime premiums allegedly incurred throughout his tenure with Dynamex is an artifact of the period covered by the settlement agreement, which covers the period beginning on November 12, 2011 (three years before Saravia filed the action). In fact, but for the settlement agreement, it appears Smith's claims would all be time-barred inasmuch as his claims all accrued more than three years prior to when he opted into the action (in early 2016) — beyond the applicable statute of limitations. (For FLSA collective actions, there is no tolling of claims before a plaintiff opts in.)

The fact that the bulk of Smith's work is not compensated is unfortunate, but not a basis for rejecting the settlement agreement. Indeed, to the extent Smith's claims before 2011 are not time-barred, they survive the release herein.

Dynamex did not address Smith's objection in its brief. At the fairness hearing, both sides agree it did not conform to the proper procedure. The settlement agreement provides, "[a]ny individual who fails to file and serve timely written objections in this manner shall be deemed to have waived any objections and shall be foreclosed from making any objection to the settlement and from filing any appeal from any Final Approval order issued by the Court." Accordingly, while this order considers the substance of Smith's objection, which it finds unavailing, by the terms of the agreement, his failure to validly opt out means he remains part of the collective. Accordingly, he will receive his proper disbursement under the agreement, and he will release his claims for the period beginning on November 12, 2011.

To the extent it is necessary to rule on the improper objection, it is **OVERRULED**.

### C. Jaswinder Singh.

One individual, Jaswinder Singh, requested to be excluded from the settlement but did *not* formally object. Nevertheless, he submitted a statement complaining that he had never been

6

paid overtime and had received no reimbursement for mileage. This action did not concern expense reimbursement, though other pending actions against Dynamex, in which Sundhu may be a class member, do pursue such claims. All agree Singh properly excluded himself from the settlement. Accordingly, he will not receive a check and will not release any claims.

   3. **SERVICE AWARD.**

Plaintiffs seek a service award of $7500 to the named plaintiff, Juan Saravia *in addition to* his share of the settlement (and separate from the total settlement fund). Such a significant incentive award is not warranted. Saravia did bring this case to fruition and participated in substantial discovery all at the risk of reputational harm. True, he was deposed and produced a substantial amount of written discovery, but so were many of his fellow plaintiffs. His contribution does not differ meaningfully from that of the other dozens of plaintiffs who responded to discovery requests. There is little reason to allow Saravia to recover substantially more than those plaintiffs.

Nevertheless, Saravia's efforts deserve recognition. He initiated the case, participated in *three* settlement conferences, and provided assistance to counsel from the outset. Accordingly, a service award of $1000 is appropriate.

**CONCLUSION**

For the reasons stated above, final approval of the settlement is **GRANTED**. A service award of $1000 to Juan Saravia is **AUTHORIZED**. A separate order addresses plaintiffs' counsel's request for fees and costs. This order reiterates, however, that Dynamex shall pay the awarded costs and one-half of the awarded fees now, and that the balance of the fee award shall not be paid until all of the work of administering the settlement is done.

The parties shall please prepare a stipulated judgment identifying each plaintiff who is subject to the release.

**IT IS SO ORDERED.**

Dated: April 7, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

7